IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETH ANNE HARTUNG, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| vs. | : | NO. 12-6155 |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
|     Defendant | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                         **May 19, 2016**

      Beth Anne Hartung seeks judicial review of the final decision of the Commissioner of the Social Security Administration which denied her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act.  The Commissioner responded to Ms. Hartung's request for review.  Upon referral to United States Magistrate Judge Carol Sandra Moore Wells, a Report & Recommendation (the "Report") was filed which recommended that I remand this action to the Commissioner for further proceedings. Specifically, Judge Wells found that the Administrative Law Judge ("ALJ") failed to evaluate properly the medical evidence of record, that the ALJ improperly assessed the opinion of Ms. Hartung's treating physician, and that the ALJ's findings at Step Three of the sequential analysis were not supported by substantial evidence.  The Commissioner filed Objections.  For the following reasons, I will sustain the Commissioner's

Objections, reject the Report, and find that the Commissioner's final decision is supported by substantial evidence.

A district court reviews *de novo* the parts of the Magistrate Judge's Report & Recommendation to which either party objects. See 28 U.S.C. § 636(b)(1). The district court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. Id.

Under the well-established substantial evidence standard, my review is limited to determining whether the ALJ's decision is supported by substantial evidence. See 42 U.S.C. § 405(g); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). If substantial evidence supports the ALJ's decision, I must affirm it. Substantial evidence is not a large or considerable amount of evidence, but is such evidence as a reasonable mind might accept to support a conclusion. Pierce v. Underwood, 487 U.S. 552, 555 (1988). Substantial evidence is often defined as more than a mere scintilla but somewhat less than a preponderance. Richardson v. Perales, 402 U.S. 389, 390, 401 (1971).

It is essential to remember that even if I were to have decided the case differently, I must still defer to the Commissioner and affirm her findings if substantial evidence supports them. Perales, 402 U.S. at 390, 401. I may not undertake a *de novo* review of or reweigh the evidence of record. Id.

Judge Wells found that the ALJ inaccurately stated the contents of the medical evidence of record. The judge specifically took exception with the ALJ's statement that Ms. Hartung "has a history of psychotropic medications but no history of mental health treatment." The Commissioner objects to that finding and explains that the ALJ's

2

statement must be read in context. She argues that the ALJ did not find that Ms. Hartung had no mental health treatment at all, but that Ms. Hartung's primary care treatment notes from 2007 to 2009 reflect no mental health treatment during that period. I agree.

Gladys Frye, M.D., treated Ms. Hartung from 2007 to 2009, and was a primary care physician, not a psychiatrist or other mental health specialist. (Tr. 253-314). Dr. Frye's treatment was limited to providing medication, not providing any counseling or psychotherapy. (Tr. 253-314). Dr. Frye even acknowledged that Ms. Hartung was not receiving mental health treatment beyond medication. She noted that she would consider a psychiatric consultation if Ms. Hartung received less than optimal control from the psychiatric medications. (Tr. 269).

Further, the opinion of state agency psychologist Charles Lawrence, Ph.D., supports the ALJ's characterization of Ms. Hartung's treatment history. Dr. Lawrence stated, "There is a history of psychotropic medications, but no history of mental health treatment, only for substance abuse." (Tr. 335).

I note that the ALJ did not ignore the mental health treatment that Ms. Hartung received, but discussed it thoroughly. (Tr. 15-17). This mental health treatment consisted solely of brief treatment with TEAMCare Behavioral Health from February through June of 2010, and then sessions at Behavioral Healthcare Corp. in January and February of 2011. (Tr. 442-446). I also note that the Report acknowledged that the ALJ discussed Ms. Hartung's mental health treatment. Therefore, I find that the ALJ accurately described the evidence of record as showing a past history of medication, but limited mental health treatment. I will sustain the Commissioner's Objection.

The Report also found that the ALJ mischaracterized Ms. Hartung's daily activities. I disagree. It is the sole prerogative of the ALJ to assess the credibility of a plaintiff's subjective complaints. Chandler v. Commissioner, 667 F.3d 356, 363 (3d Cir. 2011); see also Coleman v. Commissioner of Social Security, 494 F.App'x 252, 253 (3d Cir. 2012) (quoting Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003) (we ordinarily defer to an ALJ's credibility determination because she has the opportunity at a hearing to assess a witness's demeanor). Here, the Report's conclusion that the ALJ mischaracterized Ms. Hartung's daily activities seems to be based on inconsistencies between Ms. Hartung's testimony and the ALJ's description of her daily activities. The ALJ properly resolved those inconsistencies, however, through an assessment of Ms. Hartung's credibility.

Ms. Hartung prepared a "Function Report – Adult" in November 2009, in conjunction with her application for benefits, which is inconsistent with her testimony at the administrative hearing. In that activities report, Ms. Hartung indicated that she drives her son to school, and that she handles her children's daily activities. (Tr. 200-201). Although the Report finds that Ms. Hartung could not have driven her son to school because she had lost her driver's license in 2001, Ms. Hartung's activities report showed that she continues to drive. (Tr. 200-201). Ms. Hartung also stated that she prepared her meals daily, and that there were no changes in her cooking habits as a result of her alleged disability. (Tr. 202). She acknowledged being able to do laundry for a few hours before an exacerbation of her pain. Id. She also shopped for groceries, clothing, and daily necessities. (Tr. 203). Ms. Hartung acknowledged being able to pay her bills,

4

count change, handle a savings account, and use a checkbook or money order. Id. I also note, as the Commissioner points out, that Ms. Hartung's alleged disability did not prevent her from performing her hobbies, such as crafts and puzzles, and there was no change in her hobbies since the onset of her alleged disability. (Tr. 204). She engaged in social activities such as visiting with other people at their homes, and watching movies about twice a week, and she regularly attended church. Id. Ms. Hartung would "prefer to have company" but was able to go places alone. Id. Her treatment notes reveal that Ms. Hartung dated a new partner in the summer of 2010 (Tr. 428), and that she managed to do "very well with her children and is able to care for them." (Tr. 445).

The ALJ is not required to accept Ms. Hartung's testimony especially where that testimony is inconsistent with the evidence of record. In describing Ms. Hartung's activities, the ALJ properly assessed Ms. Hartung's credibility as is the ALJ's duty. Therefore, I find that substantial evidence supports the ALJ's description of Ms. Hartung's activities of daily living. I will sustain the Commissioner's Objection.

The Commissioner next objects to the Report's finding that Dr. Frye's conclusion that Ms. Hartung was incapable of working was entitled to great weight as that of a treating physician. The ALJ found that Dr. Frye's opinion was given little weight because her findings were "clearly overstated as shown by Dr. Frye's progress notes, the limited treatment history, and the fact that the claimant reported stable symptoms with medication compliance." (Tr. 17). Id. It is well-established that an ALJ may afford greater weight to a non-examining physician than a treating physician, if the non-examining physician's opinion has greater support in the record. Chandler v.

Commissioner, 667 F.3d 356, 361-362 (3d Cir. 2011); see also Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011) ("the law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008); see also Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (the ALJ typically should afford great deference to treating physicians' reports, but the ALJ may discredit a medical source's opinion when there is contradictory evidence in the record and may give more or less weight depending upon the extent to which supporting explanations are provided).

The Report indicated that the ALJ should not have relied upon Ms. Hartung's limited treatment history with Dr. Frye as a reason to discount Dr. Frye's opinion. It is important to note that the ALJ did not characterize Ms. Hartung's treatment history with Dr. Frye as limited. Rather, the ALJ based her findings on Ms. Hartung's limited *mental* health treatment with Dr. Frye. (Tr. 17). That distinction is dispositive. The ALJ discounted Dr. Frye's conclusions about Ms. Hartung's mental limitations based on her limited mental health treatment history, not her primary care treatment history with Dr. Frye. Ms. Hartung's mental health treatment consisted of brief treatment with TEAMCare from February through June of 2010 (Tr. 401-423), and sessions at Behavioral Healthcare in January and February of 2011. (Tr. 442-46).

I also note that the evidence of record involving Dr. Frye is not without inconsistencies. In fact, the ALJ supported the discounting of Dr. Frye's opinion with Dr. Frye's own progress notes. On a Medical Source Statement of Ability to Do Work-Related Activities (Mental) dated January 14, 2011, Dr. Frye checked that Ms. Hartung

6

had several marked and extreme limitations. (Tr. 435-437). For example, Dr. Frye opined that Ms. Hartung had marked limitations in the ability to make judgments on complex work-related decisions; and the ability to interact appropriately with the public, supervisors, and co-workers. She also opined that Ms. Hartung had extreme limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. Notwithstanding these alleged limitations, Dr. Frye noted, ten days after completing that form, that Ms. Hartung's speech was normal; that her judgment and thought content were normal; that her mood appeared anxious but her affect was not angry, not blunt, not labile, and not inappropriate; that she was agitated, but not aggressive, hyperactive, slowed, or withdrawn; that she was not actively hallucinating and not combative; that her cognition and memory were normal; that she did not exhibit a depressed mood; and that she was attentive. (Tr. 439-440). The ALJ also reviewed Dr. Frye's other treatment notes which reveal that Ms. Hartung had reported feeling stable and being able to care for her children, and that her anxiety was controlled with medication; and that they further revealed normal speech, normal thought contact and judgment, and anxious mood, and no signs of hallucinations, hyperactivity, or being withdrawn. (Tr. 16). Brown, 649 F.3d at 197 (finding substantial evidence supported finding of non-disability, where treatment notes showed appropriate physical appearance, good memory, fair insight and judgment, normal motor activity, normal speech, polite attitude, and cooperative behavior); Burke v. Commissioner of Soc. Sec., 317 F.App'x 240, 243-244 (3d Cir. 2009) (finding the ALJ properly discounted weight to treating physician where the treating physician's own progress notes were inconsistent with his

opinion). Thus, these inconsistencies in the treatment notes further support the ALJ's finding that Dr. Frye should not be afforded the great weight generally given to treating physicians.

Similarly, other evidence of record supports the ALJ's finding. At a psychiatric evaluation with TEAMCare on March 12, 2010, it was noted that Ms. Hartung was adequately groomed, had no psychomotor agitation or retardation, and showed a logical thought process despite a depressed mood; she had no hallucinations, she was fully oriented, and she exhibited three out of three recall. (Tr. 402-03). By April, the notes revealed that Ms. Hartung had "improved significantly" and had an appropriate appearance, cooperative behavior, no delusions, logical thought process, and intact sensorium, memory, and judgment. (Tr. 406). Ms. Hartung was discharged from TEAMCare on June 1, 2010, because she failed to attend her sessions or return phone calls. (Tr. 408-410). She did not seek mental health treatment until over six months later when she sought treatment at Behavioral HealthCare with Marilyn Walker, M.S., a psychotherapist. (Tr. 443-446). At her initial evaluation, it was noted that Ms. Hartung was of average intelligence; had no eccentricities in her behavior; maintained appropriate eye contact and normal speech; had intact memory and abstract thinking; had an average fund of knowledge; possessed average insight and judgment; and was cooperative. (Tr. 444).

Ms. Hartung's daily activities report also provides support for the ALJ's discounting of Dr. Frye's opinion. The daily activities report shows that Ms. Hartung was able to maintain daily activities, such as cooking, cleaning, shopping, and caring for

8

her children. (Tr. 16-17). See Griese v. Comm'r of Soc. Sec., 251 F.App'x 799, 803 (3d Cir. 2007) (finding daily activities such as cooking, reading, shopping, and having a boyfriend contributed to substantial evidence supporting finding of non-disability). Accordingly, I find that there is substantial evidence in the record to support the ALJ's decision to afford Dr. Frye's opinion little weight. I will sustain the Commissioner's Objection.

Next, the Report finds that the ALJ's Step Three analysis in the sequential evaluation is not supported by substantial evidence. Specifically, the Report reasoned that because the ALJ failed to consider properly the medical evidence and Dr. Frye's opinion, it was impossible to review the ALJ's determination of whether Ms. Hartung's mental impairment met a listing. The Commissioner objects to this finding.

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1). Each case is evaluated by the Commissioner according to the following five-step sequential analysis: (1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity to determine whether she can

perform work she has done in the past despite the severe impairment - if she can, she will be found not disabled; and (5) if the claimant cannot perform her past work, the Commissioner will consider the claimant's residual functional capacity, age, education, and past work experience to determine whether she can perform other work which exists in the national economy. See Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431-432 (3d Cir. 1999). Here, the ALJ determined at Step Three that Ms. Hartung's severe impairment did not meet or equal a listed impairment, specifically Listing 12.06 for Anxiety Related Disorders.[1]

The "Listings" is a regulatory device used to streamline the decision making process by identifying those claimants whose medical impairments are so severe that they would be found disabled regardless of their vocational background. Sullivan v. Zebley,

---

[1] Listing 12.06, Anxiety Related Disorders, provides:
    1. In these disorders, anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
    A. Medically documented findings of at least *one* of the following: (1) Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: (a) Motor tension; or (b) Autonomic hyperactivity; or (c) Apprehensive expectation; or (d) Vigilance and scanning; or (2) A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or (3) Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or (4) Recurrent obsessions or compulsions which are a source of marked distress; or (5) Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. And
    B. Resulting in at least *two* of the following: (1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration; Or
    C. Resulting in complete inability to function independently outside the area of one's home. See 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.06.

493 U.S. 521, 532 (1990). The Listing of Impairments is found at 20 C.F.R. pt. 404, subpt. P, app. 1. The Listings define impairments that are severe enough to prevent a person, regardless of age, education or work experience, from performing "any gainful activity" - not just substantial gainful activity. Zebley, 493 U.S. at 532. The claimant has the burden of proving a presumptively disabling impairment found in the Listings. Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987). To meet this burden, the claimant must prove that she meets all the requirements of the Listing. Zebley, 493 U.S. at 530. A claimant who meets only some of the requirements of the Listing, "no matter how severely, does not qualify." Id.

To meet Listing 12.06, Ms. Hartung must demonstrate that she suffers from an "anxiety related disorder" that meets "[t]he required level of severity for these disorders [which] is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied."

Here, the ALJ first found that Ms. Hartung's severe impairment did not satisfy the Paragraph B criteria of the listing, which requires at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. The ALJ found, and substantial evidence supports, that Ms. Hartung has no restriction in her activities of daily living. The ALJ noted that Ms. Hartung is able to care for her children, is able to drive them to school, and spends her days cleaning, doing laundry, grocery shopping, and cooking. (Tr. 14).

11

The ALJ further found, and substantial evidence supports, that Ms. Hartung has moderate difficulties in social functioning. The ALJ noted that Ms. Hartung presented as pleasant and cooperative with all of her treating sources despite her complaints of social anxiety. In addition, Ms. Hartung spends time with her children, and does not report any difficulties relating with family or neighbors. Id.

The ALJ then found, and substantial evidence supports, that Ms. Hartung has mild to moderate difficulties with regard to concentration, persistence, or pace. The ALJ based this finding on Ms. Hartung's report of being able to handle the household finances, being able to care for her children without difficulty, attending her appointments in a timely manner, and being able to follow written instructions. She does, however, report difficulty completing tasks and following oral instructions secondary to her depression/anxiety and fatigue. Id.

Finally, the ALJ found that Ms. Hartung has experienced no episodes of decompensation which have been of extended duration, a finding which is supported in the record by substantial evidence. The ALJ determined that because Ms. Hartung's mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation each of extended duration, the Paragraph B criteria were not satisfied.

The ALJ then found that Ms. Hartung's severe impairment also did not satisfy the Paragraph C criteria of the listing, which requires a finding of complete inability to function independently outside the area of one's home. The ALJ noted that the evidence

failed to establish the presence of that paragraph's criteria, and substantial evidence exists in the record to support that finding.

As discussed above, substantial evidence supports the ALJ's finding that Ms. Hartung did not experience marked limitations in daily activities, social functioning, or concentration, persistence, or pace. Ms. Hartung drove her son to school, handled her children's daily activities, prepared meals, had no change in her cooking habits due to her alleged disability, did the laundry, shopped in stores, was able to handle bills, and had no change in her hobbies. (Tr. 200-204). She also spent time with other people, dated, went to the homes of others, regularly visited church, and watched movies. (Tr. 204, 428). Ms. Hartung managed to do "very well with her children and is able to care for them." (Tr. 445). The treatment notes at TEAMCare show that when Ms. Hartung received one-on-one counseling, she improved significantly, had an appropriate appearance, cooperative behavior, no delusions, a logical thought process, and intact sensorium and judgment. (Tr. 406). Dr. Frye's treatment notes show that Ms. Hartung displayed normal speech, behavior, judgment, thought content, affect, cognition, and memory. (Tr. 425, 439-440). Treatment notes from Behavior HealthCare show that Ms. Hartung was of average intelligence, had no eccentricities in her behavior, maintained appropriate eye contact and normal speech, had intact memory and abstract thinking, had an average fund of knowledge, possessed average insight and judgment, and was cooperative. (Tr. 444).

I also note that Ms. Hartung's global assessment of functioning ("GAF") scores[2] were primarily in the moderate range of 51-60.  Ms. Hartung's GAF scores were:  55 in February of 2010 (Tr. 412); 53 in March of 2010 (Tr. 403-404); 57 in April of 2010 (Tr. 406); and 53 in February of 2011 (Tr. 442).  The Report notes that the ALJ "totally ignored" the GAF score of 50 upon Ms. Hartung's discharge from TEAMCare on June 1, 2010.  As the Commissioner points out, the ALJ discussed the Discharge Report in which this score appeared, and thus clearly considered this evidence.  (Tr. 16).  In addition, unlike all of her other GAF scores, the June 1, 2010 GAF score was signed only by a licensed social worker, not an acceptable medical source.  (Tr. 408-410).  See 20 C.F.R. §§ 404.1513, 416.913.  Moreover, this GAF score was not assessed during an appointment or examination, but at a time when Ms. Hartung was being discharged for not showing up for her appointments and had not actually been evaluated in nearly two months.  (Tr. 406-410).  At the time of her last actual evaluation with TEAMCare in April of 2010 - before she voluntarily stopped reporting for treatment - her GAF as confirmed by a psychiatrist was 57.  (Tr. 406).  Accordingly, as the Commissioner points out, the ALJ was under no obligation to specifically discuss the single GAF score of 50 that was assessed without an evaluation at the time of Ms. Hartung's discharge from

---

[2] The latest edition of the Diagnostic and Statistical Manual of Mental Disorders, "DSM-5," abandoned the GAF scale as a measurement tool.  Because of this, the Social Security Administration now permits ALJ's to use GAF ratings as opinion evidence when assessing disability claims involving mental disorders; but instructed that a "GAF score is never dispositive of impairment severity," and an ALJ should not "give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence."  See SSA AM-13066 at 5 (July 13, 2013); see also Hughes v. Comm'r Soc. Sec., 2016 U.S. App. LEXIS 894, *5-6 n.2 (3d Cir. January 20, 2016).

treatment. See Rios v. Comm'r of Soc. Sec., 444 F.App'x 532, 535 (3d Cir. 2011); Gilroy v. Astrue, 351 F.App'x 714, 716 (3d Cir. 2009); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008).

In her brief and statement of issues in support of her request for review of the Commissioner's final decision, Ms. Hartung also challenged two other related findings in the ALJ's decision, i.e., the ALJ's assessment of Ms. Hartung's residual functional capacity, and the ALJ's determination that Ms. Hartung retained the ability to perform two occupations which exist in significant numbers in the national economy. After a review of the record, I find that substantial evidence supports both of these findings.

Ms. Hartung argues that the ALJ's residual functional capacity assessment failed to account for severe functional limitations in the record. Specifically, Ms. Hartung argues that the ALJ failed to incorporate the limiting effects of Ms. Hartung's severe anxiety in work settings in her residual functional capacity. Thus, she insists, the residual functional capacity is inaccurate and not supported by substantial evidence. I disagree.

Before considering Step Four of the sequential evaluation, an ALJ must first determine the claimant's residual functional capacity. See 20 C.F.R. § 404.1520(e), and § 416.920(e). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making that finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. See 20 C.F.R. § 404.1520(e), and § 416.920(e); and 20 C.F.R. § 404.1545, and § 416.945.

Here, the ALJ determined that Ms. Hartung has the residual functional capacity to perform light work with the following exceptions: she needs to avoid climbing ropes, ladders, scaffolding and poles; she should avoid exposure to extreme heat, loud and very loud noise levels, working in high exposed places, and working around fast moving machinery on the ground; she is capable of occasional climbing stairs, stooping, kneeling, crouching/squatting, and crawling; and that she retains the mental capacity for unskilled work tasks. (Tr. 15). This residual functional capacity sufficiently incorporates Ms. Hartung's limitations associated with her anxiety which the ALJ determined was a severe impairment. Ms. Hartung testified that she has had continued difficulty "following through" with everything, and that she left her last job after training because she "determined that there was no way [she] would be able to do it with [her] anxiety because of all the cars, and all the people, and everything around." (Tr. 35, 38, 42, 45, 47, 48). She also testified that her mother fired her from her part-time job at a retail store because of her anxiety, i.e., because she "messed up" a couple money transactions. (Tr. 54). Based on these subjective complaints, the ALJ limited Ms. Hartung to work which avoids loud and very loud noise levels, work which avoids fast moving machinery, and work which is unskilled. The ALJ determined that Ms. Hartung's "impairments could reasonably be expected to cause the alleged symptoms; however," the ALJ continued, Ms. Hartung's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 16). Thus, I find that the residual

16

functional capacity assessed by the ALJ is supported in the record by substantial evidence.

Next, Ms. Hartung argues that the ALJ improperly relied on the testimony of an independent vocational expert who determined, based upon the hypotheticals posed by the ALJ, that a claimant similar to Ms. Hartung with her same residual functional capacity and limitations could perform the jobs of cleaner/housekeeper and/or conveyor line bakery worker.  (Tr. 65).  Where an ALJ relies upon testimony from a vocational expert, based upon a hypothetical question that encompasses all credibly established limitations, substantial evidence supports the ALJ's decision.  See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

Here, the ALJ's hypothetical question to the vocational expert included exceptions to the full range of light work: occasional stair climbing but no rope, ladder, scaffolding, or pole climbing; occasional stooping, kneeling, crouching, squatting, or crawling; no exposure to extreme heat, high exposed places, or fast moving machinery; no high noise intensity; and unskilled work.  (Tr. 62-65).  Considering all of these limitations, the vocational expert testified that a claimant such as Ms. Hartung was able to perform the jobs of cleaner/housekeeper, or bakery conveyor line worker.  (Tr. 62-65).  Ms. Hartung argues that she experienced even greater limitations, such as the limitations listed in Dr. Frye's report and her own subjective complaints.  However, the ALJ was not required to include all limitations alleged by Ms. Hartung, only those credibly established by the evidence.  Rutherford, 399 F.3d 546, 554.  As discussed above, substantial evidence supports the ALJ's finding that Dr. Frye's report was due little weight, her subjective

complaints lacked credibility, and Ms. Hartung could perform the mental demands of unskilled work, with occasional interaction with the public.

In arguing that she could not perform the jobs identified by the ALJ, Ms. Hartung also relies upon the findings of a psychological consultative examining psychologist, Phillip Taylor, Ph.D., who stated that Ms. Hartung had a GAF of 50 with "marked" restrictions in responding appropriately to the public, co-workers, and others, responding appropriately to work pressures, and in making adjustments on simple work-related decisions.  (Tr. 370-375).  However, the ALJ afforded Dr. Taylor's opinion little weight because it appeared "to be based on [Ms. Hartung's] subjective complaints rather than the actual examination findings which were fairly limited."[3]  (Tr. 17).

In conclusion, a court reviewing the final decision of the Commissioner must be ever cognizant of the standard of review provided by Congress.  Whether I would have decided the case in another way or weighed the evidence differently, my review is still limited to determining whether the ALJ's decision is supported by substantial evidence.  I may not undertake a *de novo* review of the evidence.

Instead, I must defer to the Commissioner and affirm her findings where, as here, substantial evidence supports them.  After a careful and independent review of the evidence, I find that substantial evidence supports the ALJ's finding that Ms. Hartung is "not disabled."  As a remand will likely not result in a different outcome, I will sustain

---

[3] As the Commissioner points out, Ms. Hartung did not challenge the ALJ's discounting of Dr. Taylor's opinion, and thus the issue is waived.  See United States v. DeMichael, 461 F.3d 414, 417 (3d Cir. 2006) ("An issue is waived unless a party raises it in its opening brief").

the defendant's Objections, and affirm the decision of the Commissioner of the Social Security Administration.

      An appropriate Order follows.